AO 106 (Rev. 01/09)   Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of New York



In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

U.S. Postal Service Priority Mail Parcel addressed to Allison Staley 235 Laird Ave upper Buffalo NY 14207, with tracking number 9505510415789218166191

Case No. 19-MJ-4133

## APPLICATION FOR A SEARCH WARRANT

I, Joshua Burch, a U.S. Postal Inspector, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the Western District of New York *(identify the person or describe property to be searched and give its location)*:

The subject property to be searched: **U.S. Postal Service Priority Mail Parcel addressed to Allison Staley 235 Laird Ave upper Buffalo NY 14207, with tracking number 9505510415789218166191, as described in Attachment A.**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: **See Attachment B for the Items to be Seized, all of which are fruits, evidence and instrumentalities related to narcotics trafficking and distribution in violation of Title 21, United States Code, Sections 841, 844 and 846.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- **X** evidence of a crime;
- **X** contraband, fruits of crime, or other items illegally possessed;
- **X** property designed for use, intended for use, or used in committing a crime;
- ___ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of **Title 21, United States Code, Sections 841, 844 and 846,** and the application is based on these facts which are continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Joshua Burch – U.S. POSTAL INSPECTOR
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 28, 2019

_____
*Judge's signature*

City and State: Rochester, New York      Hon. Marian W. Payson, U.S. Magistrate Judge
*Printed name and title*

ATTACHMENT A

DESCRIPTION OF PARCEL TO BE SEARCHED

A parcel addressed to "Allison Staley 235 Laird Ave upper Buffalo NY 14207" and bears a return address of "Omar Matias Cond. Jardines Seveno Edf. 6 Apt 606 Carolina PR 00983". The Priority Mail parcel bears USPS tracking number 9505510415789218166191, and is a white in color medium USPS cardboard box measuring approximately 12" x 14" x 3", and weighing approximately 3 lbs. (Hereinafter the "Subject Parcel") The mailing was prepaid and had an expected delivery date of August 10, 2019.

## ATTACHMENT B – ITEMS TO BE SEIZED:

    a.    All controlled substances, controlled substance analogues, drug paraphernalia, and items used in the process of manufacturing controlled substance;

    b.    Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records and other documents noting the price, quantity, and/or times when drugs were obtained, transferred, sold, distributed, and/or concealed;

    c.    Currency or other monetary instruments.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

STATE OF NEW YORK   )
COUNTY OF MONROE  ) SS:
CITY OF ROCHESTER  )

19-mg-4133

Your Affiant, Joshua E. Burch, United States Postal Inspector, being duly sworn, hereby deposes and states:

1. I am a United States Postal Inspector assigned to the Boston Division (Rochester, NY Field Office) of the United States Postal Inspection Service ("Inspection Service"), and have been so employed since January 2007. Prior to June 2018, I was assigned to the a Prohibited Mail and Narcotics Team in Wilmington, DE, where I was assigned to the DEA Drug Task Force and Diversion Group and Delaware Joint Terrorism Task Force. Prior to January 2012, I was assigned to a Prohibited Mail and Narcotics team in Baltimore, MD, which targeted narcotics and narcotics proceeds sent via the U.S. Mail. I am currently assigned to the Miscellaneous Crimes Team which investigates violations of Federal law, including identity theft, mail theft, credit card fraud, wire fraud, mail fraud and drug trafficking.

2. Your Affiant's education and training includes the following: Upon entering the Inspection Service, I completed twelve weeks of training in Potomac, MD. The training covered various aspects of federal law enforcement, including the investigation of narcotics related offenses. I have received instruction on conducting investigations of, and have in fact participated in investigations involving, possession with intent to distribute and distribution of controlled dangerous substances. Prior to entering the Inspection Service, I served as a sworn police officer for the Wilmington Police Department for seven years

after graduating from the Wilmington Police Academy. After five years of patrol investigation in the Uniformed Division, I was transferred to the Vice and Organized Crime Unit to investigate narcotics and narcotic trafficking. I have received specialized training from the Drug Enforcement Administration in surveillance. I have also attended numerous courses on interviewing and interrogation.

3. During my employment as a Postal Inspector, I have participated in investigations involving the mailing of controlled substances through the U.S. mails. In particular, I have worked on numerous cases involving the mailing of controlled substances in International Mail, Express Mail, and Priority Mail. I have participated in interviewing witnesses and cooperating individuals regarding illegal trafficking of drugs and have read official reports of other officers. I have also been a case agent in charge of investigations involving drug trafficking. As a result of my experience, I am familiar with the common practices utilized by drug traffickers to smuggle drugs and money through commercial mail/parcel carriers.

### DESCRIPTION OF ITEM TO BE SEARCHED

4. I make this affidavit in support of an application for a warrant authorizing the search of the following **U.S. Postal Service Priority Mail parcel**:

A parcel addressed to **"Allison Staley 235 Laird Ave upper Buffalo NY 14207"** and bears a return address of **"Omar Matias Cond. Jardines Seveno Edf. 6 Apt 606 Carolina PR 00983"**. The Priority Mail parcel bears USPS tracking number **9505510415789218166191**, and is a white in color medium USPS cardboard box measuring approximately **12" x 14" x 3"**, and weighing approximately **3 lbs.** (Hereinafter the "Subject Parcel") The mailing was prepaid and had an expected delivery date of August 10, 2019.

2

5. Since this affidavit is being submitted for the limited purpose of securing a search warrant for the Subject Parcel, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of a violation of Title 21, United States Code, Sections 841, 844 and 846 will be located within the Subject Parcel.

## SUSPICIOUS CHARACTERISTICS OF MAIL PARCELS OFTEN FOUND TO CONTAIN CONTRABAND OR NARCOTICS

6. Based on my training and experience, I am aware that the Postal Service's Priority Mail Express service was custom-designed to fit the needs of businesses by providing overnight delivery for time-sensitive materials. Priority Mail Express parcels typically used by businesses to send documents often utilize typewritten labels, are sent in pre-printed cardboard mailers, and typically weigh, on average, up to 2 pounds. Corporate charge accounts were also developed by the Postal Service so that businesses would be able to enter their account number directly on the Priority Mail Express label, thus avoiding time-consuming cash payments for each business mailing. Priority Mail Express also comes with a "built-in" unique tracking number that can be used to track the status of each parcel. In contrast to Priority Mail Express, Priority Mail service was developed primarily to allow businesses and the general public a means to expedite delivery of items within a specific timeframe, typically within 2-4 days, when overnight service is not required. Priority Mail also comes with a "USPS Tracking Number" that can be used to track the status of each parcel, in the same way Priority Mail Express parcels are tracked. Priority Mail also offers mailers the ability to send documents (or other items) in a pre-printed cardboard mailer, which typically weighs up to 2 pounds, similar to the option available using a Priority Mail

3

Express pre-printed cardboard mailer.

7. Based on my training and experience, I have learned that narcotics traffickers often utilize Priority Mail Express and Priority Mail for the transportation of controlled substances, or the proceeds from the sale of controlled substances, based upon the fact that Priority Mail Express and Priority Mail can quickly move the items to the delivery destination. Perhaps more importantly, the movement of packages via Priority Mail Express and Priority Mail can also be tracked via telephone and/or the internet based upon the unique tracking number assigned to each specific parcel. This is important to narcotics traffickers because any delay in the delivery of the mail can serve as an indication to the mailer that the items have possibly been intercepted by the U.S. Postal Inspection Service. Additionally, items sent via Priority Mail Express or Priority Mail are considered to be first-class mail, and therefore, cannot be opened without a Federal Search Warrant.

8. I am also aware, based upon my training and experience, that parcels containing contraband often display many similar qualities. For example, these packages may often display some or all of, but not limited to, the following characteristics:

   a. Unlike typical Priority Mail Express or Priority Mail business mailings containing documents, which usually have typed labels, parcels known to have contained controlled substances and/or their proceeds typically bear a handwritten label. Based on my training and experience, and upon the training and experience of fellow Postal Inspectors, I know that drug dealers routinely use handwritten mailing labels when they transport narcotics and/or their proceeds through the mails.
   b. The absence of a corporate account number listed on a label indicates the sender paid for postage using cash or its equivalent. A package containing controlled

4

substances typically does not contain a corporate account number, thereby indicating that the sender of the package paid cash or its equivalent, which is less traceable. Based on my training and experience, and upon the training and experience of fellow Postal Inspectors, senders of parcels containing controlled substances are known to pay for postage using cash in order to remain anonymous and to therefore avoid detection.

c. The handwritten label will often contain one or more of the following: misspelled words, incomplete addresses, fictitious addresses, or is addressed to and/or from fictitious persons. Based upon your affiant's experience and discussions with other experienced Postal Inspectors, I am aware that individuals who ship and/or receive drugs via the mail often employ fictitious return addresses and/or names not associated with the addresses, in order to avoid detection. This allows them to distance themselves from the contraband should the parcel be intercepted by law enforcement.

d. Packages containing controlled substances are normally heavier than the typical business mailing (described in paragraph 6 above) containing documents.

e. Parcels containing controlled substances often have an originating Post Office that is located in a different area, town or city than the return address listed on the parcel. The distance between the two locations can vary. Traveling various distances is often used by mailers of illegal narcotics and their proceeds in order to avoid detection, recognition, and/or being caught on surveillance video.

f. Parcels containing controlled substances are often heavily taped or glued on the seams of the parcel, and/or the outside of the package is wrapped with a type of paper covering. Heavy taping or gluing of seams, or wrapping the exterior of the package is consistent with parcels known to have contained illegal narcotics. Such efforts appear to be an attempt to contain any odors which might otherwise emanate from the package. In addition, suspicious parcels sometimes are packaged in decorative boxes to appear as gifts and/or bear markings that include "fragile" or "perishable." Mailers of illegal substances sometimes use such indicators, including purchasing services such as insurance, in order to make the parcels appear more legitimate, mundane and inconspicuous.

g. Parcels containing controlled substances may be shipped from locations which, based upon previous successful interdictions, are known source locations for the distribution of illegal narcotics.

Parcels found to meet any or all of the characteristics described above are often scrutinized by Inspectors through address verifications and trained narcotic-detecting canine examination. Postal Inspectors have been authorized to seize packages, including Priority Mail Express and

5

Priority Mail, which contain illegal narcotics that were shipped from areas around the country and Puerto Rico.

## PROBABLE CAUSE TO SEARCH THE SUBJECT PARCEL

9. On or about August 10, 2019, during a review of incoming mail, Postal Inspectors were alerted to the Subject Parcel. The Subject Parcel was processed in the Rochester, New York mail facility. The parcel shared characteristics known to be associated with packages containing narcotics, as it has excessively taped seals, a hand written label, and was inbound from Puerto Rico, a known source location for the distribution of narcotics.

10. On or about August 13, 2019 and upon further inspection, a check of a law enforcement databases revealed that the sender and recipient information appears to be fictitious. Specifically, the listed sender (Omar Matias) could not be associated with the provided return address, Cond. Jardines Seveno Edf. 6 Apt 606. The listed recipient (Allison Staley) could not be associated with the listed delivery address of 235 Laird Ave Upper Buffalo, NY 14207. USPS does not recognize the listed address as having an "upper" or "lower" designation. USPS customer service has received no inquiries regarding the delivery of the parcel.

11. Based on these factors, I decided to submit the parcel to a trained narcotics-detecting canine for examination. On August 20, 2019, I met Monroe County Sheriff's Deputy Kenneth Weber and Canine Officer "Dano" at the USPIS Rochester Domicile located

6

at 1335 Jefferson Road, Rochester New York, where "Dano" performed a drug sniff of the Subject Parcel within a secured office hallway. The handler let the canine search the area freely, off-leash. The canine searched the entire hallway, and, according to Deputy Weber, "Dano" alerted only to the Subject Parcel. According to Deputy Weber, the dog sniff of the Subject Parcel resulted in a positive alert, indicating that "Dano" detected the odor of a controlled substance that he has been trained to detect. Deputy Weber's affidavit is attached as 'Exhibit A' and is incorporated as part of this affidavit.

## CONCLUSION

12. Based upon the foregoing, it is respectfully submitted that there is probable cause to believe that the above-referenced Subject Parcel contains fruits, evidence, and instrumentalities related to narcotics trafficking and distribution in violation of Title 21, United States Code, Sections 841, 844 and 846.

**WHEREFORE**, it is respectfully requested that a search warrant be issued to search the contents of the Subject Parcel.

_____
JOSHUA BURCH
U.S. Postal Inspector

Sworn to and subscribed before me

this \_\_28\_\_ day of August, 2019.

_____
HON. MARIAN W. PAYSON
United States Magistrate Judge

# EXHIBIT A

Page 1                                                                                                          CR#

# AFFIDAVIT

State of    **NEW YORK**       } ss
County of   **Monroe**

I, _____Kenneth Weber_____  Employed by  _Monroe County Sheriff's Office, Rochester, NY 14614_
            Name                              Address                          City              State    Zip Code

By this affidavit, make the following statement of fact:

I, Kenneth Weber, am employed by the Monroe County Sheriff's Office in the capacity of road Patrol Deputy. I am currently assigned to the K-9 Unit with my K-9 "Dano". Since December of 2013, I have worked as a narcotics detector dog handler for the Monroe County Sheriff's Office. I completed my six week K-9 Narcotics Detection ourse through the Monroe County Sheriff's Office in 2013 with my dog Dano. Based upon my completion of that course, I was certified as a K-9 Narcotics Dog Handler by the New York State Division of Criminal Justice Services. Dano has specifically trained and certified in the detection of the odors of cocaine, heroin, marijuana, methamphetamine, and ectacsy. Dano and I train several times per month at narcotics detection, in order to maintain our DCJS certification. During our monthly controlled training sessions, Dano is tested using real narcotics (obtained through the Drug Enforcement Administration). The narcotics are concealed or hidden in various locations. Dano is the required to find the items. Dano has been trained to alert to the presence of narcotics by either scratching, biting, or barking at the item. During the training sessions, Dano consistently demonstrates a degree of proficiency in locating the hidden narcotics. To the best of my knowledge, I have never known Dano to falsely alert to the odor of narcotics, since his certification. In my experience, Dano has successfully found narcotics located in many different locations, to include packages, motor vehicles, buildings, and outdoors (buried in the ground).

Verification by Subscription and Notice
Under Penal Law Section 210.45

It is a crime, punishable by a class A misdemeanor under the laws of the State of New York, for a person, in and by written instrument, to knowingly make a false statement, or to make a statement which such person does not believe to be true.

Affirmed under penalty of perjury this

_____20th_____ day of _____August, 2019_____

_Deputy Kenneth Weber_
Deponent

CR#

# AFFIDAVIT

State of **NEW YORK** } ss
County of **Monroe**

I, **Kenneth Weber** Employed by **Monroe County Sheriff's Office, Rochester, NY 14614**
    Name                                      Address               City              State         Zip Code

By this affidavit, make the following statement of fact:

On August 20, 2019 at approximately 0955 hours I was requested by Postal Inspector J. Burch of the U. S. Inspection Service to respond to the Rochester NY Domicile at 1335 Jefferson Rd, Rochester, NY 14692 for a narcotics search on the following package. At approximately 1010 hours I directed K9 "Dano" to search an hallway area of the Rochester NY Domicile. The package in question is a USPS parcel bearing Tracking Number 9505 5104 1578 9218 1661 91 addressed to Allison Staley, 235 Laird Ave upper Buffalo, NY 14207. Inspector Burch placed the suspicious parcel in the hallway area with an array of similar parcels known not to contain controlled substances. When K-9 "Dano" sniffed the above numbered parcel Dano alerted to the odor of narcotics with an aggressive alert. I was not informed as to which package was the parcel in question.

False statements made herein are punishable as a class A misdemeanor pursuant to section 210.45 of the New York State Penal Law. Affirmed under penalty of perjury.

X _____ Date _8/20/19_
(affirmed)

Verification by Subscription and Notice
Under Penal Law Section 210.45

It is a crime, punishable by a class A misdemeanor under the laws of the State of New York, for a person, in and by written instrument, to knowingly make a false statement, or to make a statement which such person does not believe to be true.

Affirmed under penalty of perjury this

____20th____ day of ____August, 2019____

Deputy Kenneth Weber
Deponent